UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALYSSA N.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:22-CV-05772-GJL

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 24, 28, 29.

After considering and reviewing the record, the Court concludes: (1) the Administrative Law Judge ("ALJ") harmfully erred by rejecting the May 2019 opinion of Ms. Matteson and the hearing testimony from Dr. Andert; and (2) a remand for further proceedings is appropriate. The

Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff's application for Child Disability Benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration. *See* Administrative Record ("AR") 206, 211. Plaintiff's first hearing was held before the ALJ on August 23, 2018. *See* AR 94-176. On November 16, 2018, the ALJ issued a written decision in which the ALJ concluded that Plaintiff was not disabled pursuant to the Social Security Act. AR 55-75. On April 29, 2020, the Appeals Council denied Plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. AR 1-7.

On May 11, 2021, the Court reversed and remanded the Commissioner's decision for further consideration pursuant to the stipulation of the parties. AR 1080-1086. The Appeals Council then remanded the claim to the ALJ for a new hearing. AR 988-90. The second hearing took place on May 26, 2022. AR 991-1039. The ALJ issued a new decision on July 26, 2022, again finding Plaintiff not disabled. AR 955-82. On October 12, 2022, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Defendant filed the sealed AR regarding this matter on January 9, 2023. Dkt. 9.

## II. BACKGROUND

Plaintiff was born in 1996 and was 18 years old on the alleged date of disability onset of September 29, 2014. AR 959, 1280. Plaintiff has a high school education. AR 1826. According to the ALJ, Plaintiff suffers from, at a minimum, the severe impairments of autism spectrum disorder (ASD), attention deficit hyperactivity disorder (ADHD), bipolar disorder, and

generalized anxiety disorder (GAD) (20 CFR 404.1520(c)). AR 961. However, the ALJ found Plaintiff was not disabled because she had the following residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and apply short, simple instructions, perform routine, predictable tasks, make simple decisions, tolerate exposure to few workplace changes, have no interaction with the general public, have occasional interaction with coworkers, and cannot work in a fast-paced, production-type environment.

AR 965.

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In Plaintiff's Opening Brief, Plaintiff raises the following issues: (1) whether the ALJ properly evaluated the opinions of Plaintiff's vocational counselor, Ms. Theresa Matteson; (2) whether the ALJ properly evaluated several medical opinions; (3) whether the ALJ properly evaluated the lay witness testimony; (4) whether the ALJ properly evaluated Plaintiff's testimony; and (5) whether the matter should be remanded for an immediate award of benefits. Dkt. 24 at 1-2.

### A. The Opinions of Plaintiff's Vocational Counselor, Theresa Matteson, MS

Ms. Theresa Matteson worked with Plaintiff from September 2016 to May 2019 on behalf of the Washington Department of Social and Health Services under the Community Rehabilitation Program (CRP). AR 1460-1543, AR 1646. CRP locates, secures, and places clients in employment settings and evaluates their vocational capabilities. AR 1646. As Plaintiff worked with various employers, Ms. Matteson provided feedback and assessments in CRP

reports, which feature heavily throughout the ALJ's decision and the parties' briefings. *See, e.g.*, AR 1651-53, AR 969, Dkt. 28 at 5. Ms. Matteson also submitted two opinions on Plaintiff's functional limitations, one in September 2016 and another in May 2019. AR 389-90, 1452-53.

In her opinion dated September 21, 2016, Ms. Matteson completed a "Significance of Disability Form" in which she concluded that Plaintiff would "require substantial counseling and guidance to determine an appropriate vocational goal that matches her abilities and skill with hearing loss," and that Plaintiff was "unable to perform at a pace necessary to meet minimum production or job standards; or productivity and/or quality of work significantly declines over a work shift due to limited endurance." AR 406-14, *see also* AR 389-90.

Ms. Matteson additionally noted that Plaintiff was unable to recognize or respect social cues and personal boundaries, and that she responds impulsively and is easily distracted by external/environmental stimuli. *Id.* The ALJ gave limited weight to the September 2016 opinion because it was created by "merely checking boxes on a form and providing few specific and objective facts in support of each of her opined limitations." AR 969.

Plaintiff argues that this was not a germane reason to reject the opinion, as required by *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016), and that Ms. Matteson based the opinion "on significant firsthand interactions with Plaintiff and the records of other providers working on behalf of the DVR." Dkt. 24 at 7 (citing AR 305-95, 406-94, and *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)). It is error to reject opinions expressed in check-box form when they were based on significant experience with the claimant and supported by numerous records. *Alexander M. v. Commissioner of Social Security*, No. C21-254-BAT, 2021 WL 3758145, at *2 (W.D. Wash. Aug. 25, 2021) (citing *Garrison*, 759 F.3d at 1013). But here, the September 2016 opinion was an initial assessment of Plaintiff's eligibility for the program. AR 389-390. While

there are intake notes which document some of Ms. Matteson's observations, *see* AR 391-92, the records cited by Plaintiff were largely created *after* Ms. Matteson's opinion and did not affect her conclusion. The ALJ did not err in discounting Ms. Matteson's September 2016 opinion.

However, in a subsequent opinion dated May 13, 2019, Ms. Matteson further notified Plaintiff that she was not eligible for vocational rehabilitation services and that her case was closed "because the severity of your disability is too significant for DVR services to help you get or keep a job." AR 1451-52. Based on the results of Plaintiff's trial work experience, which Ms. Matteson personally oversaw, Ms. Matteson concluded that Plaintiff "will not go to work as a result of receiving DVR services" and was thus ineligible to continue receiving vocational counseling. AR 1451.

The ALJ also gave limited weight to this opinion, concluding that because the ALJ makes determinations of disability according to Social Security law, "a determination of disability by another agency is not binding on this proceeding." AR 969. While correct, this was not a germane reason for rejecting Ms. Matteson's core conclusion — after nearly three years of work and numerous supporting CRP reports — that Plaintiff's impairments were so severe that further vocational support from the state would be fruitless. AR 1452. Thus, the ALJ erred in giving little weight to Ms. Matteson's May 2019 opinion.

**B. Assessment of Medical Opinions**

Plaintiff assigns error to the ALJ's examination of opinions from Jeffery Andert, Ph.D., Mariam Araujo, Ph.D., Terilee Wingate, Ph.D., and Sarah Magnuson-Whyte, ARPN.

For applications filed on or after March 27, 2017, the Administration has directed ALJs to not defer to medical opinions from treating or examining sources. *See* 20 C.F.R. § 416.927(c). Instead, they must evaluate the persuasiveness of all medical opinions by analyzing their

"supportability" and "consistency," as well as other appropriate factors. 20 C.F.R. § 416.920c(a). The Ninth Circuit recently held that the "revised social security regulations are clearly irreconcilable with [its] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Therefore, for applications filed after March 27, 2017, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

Pursuant to the relevant federal regulations, nurse practitioners are considered "other medical sources." *See* 20 C.F.R. § 404.1513(d); *see also Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by these sources characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner,* 613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

**1. The May 2022 Hearing Testimony by Jeffery Andert, Ph.D.**

At Plaintiff's disability hearing on May 26, 2022, Psychologist Dr. Jeffery Andert testified that Plaintiff had several moderate limitations and would be limited to unskilled work with a small number of coworkers and only occasional contact with the public. AR 1029. He also found that Plaintiff "may require some additional supervision beyond what would be typical" and that supervisors would need to observe, monitor, and provide feedback and direction to Plaintiff once or twice for a period of 5-10 minutes each workday. *Id.* The ALJ gave partial weight to this testimony, finding the bulk of his opinion was consistent with the longitudinal

record, but rejected the requirement for additional supervision. AR 971. The ALJ primarily pointed to the CRP reports, which indicated that Plaintiff generally completed every task, was able to follow multi-step instructions, asked clarifying questions when needed, and did a "wonderful job" retaining instructions and information needed to complete tasks. *Id.* (citing AR 1646-1655).

This is an incomplete picture of the CRP reports, which largely paint Plaintiff as easily distracted or otherwise indicate that extra supervision is necessary for Plaintiff to complete tasks effectively. *See* AR 1566 ("You worked on the task for approximately 15 minutes then announced you were bored and left the building . . . Your job coach tried to make arrangements with you to discuss a new site but you never followed through and stopped communicating entirely"); AR 1570-71 (describing two instances where Plaintiff required repeated instructions from job coach to prevent waste of time and resources in her tasks); AR 1654 (supervisor at pet supply store repeatedly told Plaintiff to remain off her phone and, later, that it was inappropriate for her to instruct a customer on the correct way to leash their service dog).

Even the CRP report the ALJ cited as lauding Plaintiff's "natural leadership qualities" also revealed that Plaintiff did not attend work or call anyone on one of the four days of the assessment, that her job coach reduced her hours to accommodate fatigue, and that she abruptly left the building one day and texted her job coach that she "didn't want to organize stuff." AR 971, 1651-53. The ALJ improperly cherry-picked the positive observations from the CRP reports without considering their full context and the record as a whole, including, as discussed above, that Ms. Matteson ultimately decided Plaintiff would not benefit from continuing the program. *Richard D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-5124-DWC, 2022 WL 4354815, at *9 (W.D.

Wash. Sept. 20, 2022) (internal citations omitted). The ALJ erred by ignoring Dr. Andert's supervisory requirement.

**2. The November 2017 Opinion of Mariam Araujo, Ph.D.**

Psychologist Dr. Mariam Araujo completed a psychiatry outpatient clinic note on November 16, 2017, in which she assessed Plaintiff's cognitive, executive, adaptive, and emotional functioning. AR 821-27. She observed that Plaintiff has difficulty adapting her response when engaging in problem-solving, has difficulty with self-monitoring skills, has significant impairment across all areas of adaptive functioning, and that she was experiencing "clinically significant problems in the area(s) of atypicality, locus of control, social stress, attention problems and hyperactivity" as well as anxiety and depression. AR 822-23. Dr. Araujo concluded that Plaintiff should receive certain school and work accommodations "as available," such as "additional time for project work" and support with long-term or larger projects, and that her primary challenge is her difficulty with "social insight and self-monitoring skills." AR 824.

The ALJ gave little weight to Dr. Araujo's opinion, finding that Dr. Araujo failed to state "the claimant's work-related functional limitations" with specificity. AR 969. This Court agrees. While Plaintiff is correct that doctors need not frame limitations in certain "magic words," Dkt. 24 at 13, it is unclear how Dr. Araujo's accommodations would factor into Plaintiff's RFC. Relevant here is *Patricia T. v. Comm'r of Soc. Sec.*, No. 1:17-CV-00912-MC, 2018 WL 4610053, at *2 (D. Or. Sept. 25, 2018), *aff'd sub nom. Thomas v. Saul*, 796 F. App'x 923 (9th Cir. 2019). In *Patricia T.*, the ALJ gave no weight to a portion of an opinion about the plaintiff's need for an "understanding supervisor." *Id.* at *3. The district court affirmed, finding this requirement was "not a proper functional assessment of a work limitation" and "simply too vague and unquantifiable to incorporate into the claimant's RFC or into a VE hypothetical." *Id.*

at 4. The same is true for each of the assessed accommodations here, and while Plaintiff "suggests her own interpretation" of these accommodations, the Court must defer to the ALJ's rational interpretation. *Id.* (citing *Batson v. Comm'r*, 359 F.3d 1190, 1198 (9th Cir. 2004)).

**3. The May 2019 Opinion of Terilee Wingate, Ph.D.**

Dr. Terilee Wingate completed a Psychological Evaluation of Plaintiff on May 31, 2019, on behalf of the Washington State Department of Social and Health Services. AR 1679-86. Plaintiff reported severe anxiety and depression. She also claimed to suffer from intrusive thoughts, poor anger control, impulsivity, memory problems, and hallucinations, some of which Dr. Wingate believed were exaggerated. AR 1680.

Dr. Wingate observed that Plaintiff was friendly and talkative and that her thought process, orientation, perception, memory, concentration, and abstract thought were each within normal limits, but that she had poor insight and fund of knowledge. AR 1688. Dr. Wingate concluded that Plaintiff had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual, to maintain appropriate behavior in a work setting, to complete a normal work day and work week without interruptions from psychologically based symptoms, as well as moderate limitations on her ability to learn new tasks, adapt to changes in a routine work setting, ask simple questions or request assistance communicate and perform effectively in a work setting, and set realistic goals and plan independently. AR 1682. She found the overall severity of these limitations to be severe. *Id.*

The ALJ gave little weight to this opinion because the "opinion of overall marked severity is not supported by her generally normal mental status examination, which noted despite somewhat rapid and rambling speech and abnormal responses to fund of knowledge and insight and judgment questions, she had friendly and talkative attitude, euthymic mood, full affect, and

normal thought process, thought content, memory, and concentration." AR 970. This Court agrees. "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *See Woods*, 32 F.4th at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)); *see also* § 416.920c(c)(1). Dr. Wingate's observations generally indicated that Plaintiff had good memory and concentration and was acting and appearing within normal limits. AR 1688. The ALJ reasonably found such observations inconsistent with the marked limitations.

**4. The June 2018 Opinion of Sarah Magnuson-Whyte, ARPN**

On June 18, 2018, Sarah Magnuson-Whyte, ARPN, Plaintiff's treating nurse practitioner, wrote a medical source statement based on Plaintiff's treatment over a 10-year period. AR 852-55. Ms. Magnuson-Whyte based her opinion on Plaintiff's medical history, progress and office notes, lab tests, psychological evaluations, and physical examinations. AR 854. In a check-box list of various abilities, Ms. Magnuson-Whyte concluded that Plaintiff had a Category IV limitation[1] in each of the twenty categories. AR 852. She also found that Plaintiff is likely to be absent from work five or more days each month, she would be off task for more than 30% of a workday, and she is "severely mentally disabled." AR 855.

The ALJ gave this opinion little weight, concluding that it was inconsistent with Ms. Magnuson-Whyte's own treatment notes, "in which she he repeatedly documented observing the claimant to have a coherent thought process, the ability to understand various treatment plans and recommendations, and the ability to remain focused and actively participate in conversations lasting up to 40 minutes in length." AR 970. This was a germane reason to reject Ms. Magnuson-

[1] The most severe limitation, precluding performance or productivity for 30% of an 8-hour workday. AR 852.

Whyte's opinion. At most, some treatment notes indicate that Plaintiff suffered a lack of insight and social awareness, binge eating, and poor mood. *See* AR 801, 812, 946, 952. These facts do not support the extreme limitations that Ms. Magnuson-Whyte prescribed, and the ALJ did not err. *See Jones v. Berryhill*, No. C17-965-BAT, 2018 WL 1726405, at *2 (W.D. Wash. Apr. 10, 2018), *aff'd sub nom. Jones v. Saul*, 812 F. App'x 542 (9th Cir. 2020) (ALJ properly discounted doctor where limitations were "not indicated in other examinations or treatment sessions"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting opinion due to contradiction with the physician's own notes or observations is "a permissible determination within the ALJ's province.").

**B. Plaintiff and Lay Witness Testimony**

Plaintiff also argues that the ALJ erred by discrediting her testimony as well as that of her mother. Dkt. 24 at 16-20. Because "reconsideration of the medical opinion evidence may impact [the ALJ's] assessment" of Plaintiff's credibility and her mother's statements, the ALJ is further directed to reconsider this evidence on remand. *Kelsy E. H. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05358-DWC, 2019 WL 5388191, at *3 (W.D. Wash. Oct. 22, 2019).

**C. Remedy**

Plaintiff argues this Court should remand for an award of benefits. Dkt. 24 at 18. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668. The proper course is

generally to remand for further administrative proceedings "except in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1099 (9th Cir. 2014). Remanding for a direct award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo v. Berryhill*, 871 F.3d 664, 682–83 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1020).

The third requirement is not satisfied here. Even if the ALJ gave full weight to Ms. Matteson's May 2019 opinion and incorporated Dr. Andert's requirement for additional supervision into the RFC, it is not clear these changes would mean Plaintiff is disabled, i.e., that there aren't jobs that exist in significant numbers in the national economy that Plaintiff can still perform. 20 CFR 404.1569a.

Thus, a remand for further proceedings is appropriate. On remand, the ALJ shall reevaluate Dr. Andert's testimony and the May 2019 opinion of Ms. Matteson; and redetermine RFC if necessary.

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this order. The Clerk is directed to enter judgment for Plaintiff and close the case.

//

//

Dated this 10th day of July, 2023.

Grady J. Leupold
United States Magistrate Judge